```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION

LINDA B. WALDROP, ET AL.,    }
                             }
     Plaintiffs              }
                             }   CIVIL ACTION NO.
vs.                          }
                             }   97-AR-1565-S
DAVID H. KOPLON, ET AL.,     }
                             }
     Defendants              }
```

## MEMORANDUM OPINION

The above-entitled case was removed to this court by defendants, alleging ERISA preemption. Defendants claim that the insurance policies sold by the agent for defendant, Guardian Life Insurance Company, are, in fact, part of an ERISA-governed plan, despite no invocation of, nor express reliance upon, ERISA by plaintiffs.

This court has often expressed its chagrin over what Guardian Life here admits to be its intention, namely, to tow plaintiffs' case into the federal harbor for the purpose of scuttling it by insisting that ERISA "super-duper" preemption not only triggers the right of removal but sets up an insurmountable obstacle to any claim by any plan beneficiary who has been defrauded, no matter how egregious the fraud by the ERISA entity. Attached is this court's most recent opinion, *McNatt v. Franklin Life Insurance Company*, CV

1

97-AR-1515-E, dealing with the general subject of ERISA preemption. *McNatt* is simply one in a long line of similar opinions by this court. Many of this court's opinions have not been reversed, perhaps because orders of remand for lack of subject matter jurisdiction are impossible to review. *See In re: Bethesda Memorial Hospital*, \_\_ F.3d \_\_, 1997 WL 394275 (11th Cir. 1997).

More venturesome, even than this court, was Magistrate Judge John Carroll in the Middle District of Alabama in *Alacare Home Health Services v. The Prudential Insurance Co.*, 957 F. Supp. 208 (N.D. Ala. 1997), in which Judge Carroll found that the insurer, Prudential, was not an ERISA entity and therefore closed the federal courthouse door to an ERISA removal. Judge Carroll's description of Prudential in relation to that plaintiff could just have easily been used to describe Guardian Life in its relationship with these plaintiffs. Judge Carroll stuck his neck way out by citing the Alabama Supreme Court's *Health America v. Menton*, 551 So. 2d 235 (Ala. 1989), *cert. denied*, 493 U.S. 1093, 110 S. Ct. 1166 (1990), for the following proposition:

> ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan. *Morstein*, 96 F.3d at 722. [*Morstein v. National Ins. Services, Inc.*, 93 F.3d 715 (11th Cir. 1996), *cert. denied*]. Defendants suggest that it is "ludicrous" of plaintiff to suggest that Prudential is not an "ERISA entity." However, the only evidence that defendants submit regarding the duties and responsibilities of Prudential is a letter response to the court wherein counsel states
>
> ... the Prudential policies that were purchased as part of the bonus life insurance plan were actually issued by Prudential.

2

> Prudential is not merely performing administrative functions regarding these policies but is actually responsible for paying benefits under the policies.

957 F. Supp. at 209. Judge Carroll apparently thought Prudential's contention more "ludicrous" than that of the plaintiff.

This court could remand the instant case on a simple finding of lack of subject matter jurisdiction and not risk reversal by mandamus. *See In re: Bethesda, supra.* However, this court thinks it would be fairer, if not wiser, to deny plaintiffs' motion to remand and to certify that denial for interlocutory review pursuant to 28 U.S.C. § 1292(b), giving the Eleventh Circuit a clear shot at expressing itself on the doctrine of ERISA preemption in the light of the rapidly evolving jurisprudence on the subject. If plaintiffs request such a certification, not only will it be forthcoming promptly, but the case will be stayed pending plaintiffs' efforts to obtain a definitive ruling from the Eleventh Circuit on the propriety of this particular removal, which the court frankly hopes was erroneous.

DONE this 20th day of August, 1997.

William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
                     EASTERN DIVISION
```

FRED McNATT, JR.,

    Plaintiff

vs.

FRANKLIN LIFE INSURANCE
COMPANY, ET AL.,

    Defendants

CIVIL ACTION NO.

97-AR-1515-E

AUG 1 2 1997

**MEMORANDUM OPINION**

The above-entitled case was removed to this court from the Circuit Court of Clay County, Alabama, by defendants, alleging two bases for jurisdiction, ERISA pre-emption and diversity.

The insurmountable problem with a claim of diversity jurisdiction is that the case was pending in the state court for more than one year prior to its removal. 28 U.S.C. § 1446(b). Defendants argue that this case should be an exception to that rule, but they overlook the fact that this court is a court of limited jurisdiction which, under principles of federalism, should strictly construe the jurisdictional statutes against jurisdiction. This court finds no exception in the statute for cases in which plaintiff amends to add class allegations.

There are two insurmountable problems with ERISA pre-emption as a basis for removal jurisdiction. First, ERISA's "super-duper" pre-emption is rapidly being narrowed so as to leave with the state

EXHIBIT "A"

courts traditional fraud claims brought under state law against insurance agents and their principals, even though the alleged misrepresentations might indirectly involve an ERISA plan, the argument being that the effect, if any, on the employee benefit plan is too tenuous, remote or peripheral to warrant a finding that the state claim "relates to" the plan. For instance, in *Wilson v. Zoellner*, 114 F.3d 713, 717 (8th Cir. 1997) (quoting *In Home Health, Inc. v. Prudential Ins.*, 101 F.3d 600, 602 (8th Cir. 1996), the Eighth Circuit as recently as May 21, 1997, held:

> To maintain a cause of action for negligent misrepresentation under Missouri law, one must show (1) that the speaker supplied information in the course of the speaker's business or because of some other pecuniary interest; (2) that, due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) that the speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) that the listener justifiably relied on the information; and (5) that as a result of the listener's reliance on the statement, the listener suffered a pecuniary loss.
>
> The Missouri common law on negligent misrepresentation is of general application. It does not actually or implicitly refer to ERISA plans.

This general idea was reflected by the Supreme Court itself on June 2, 1997, in *De Buono v. NYSA-ILA Medical and Clinical Services Fund*, ___ U.S. ___, 117 S. Ct. 1747 (1997), in which the Supreme Court lamented as follows:

> The boundaries of ERISA's pre-emptive reach have been the focus of considerable attention from this Court.
>
> \*   \*   \*

2

>   And in the 16 years since we first took up the question, we have decided no fewer than 13 cases.
>
>   \*   \*   \*
>
>   The issue has generated an avalanche of litigation in the lower courts.
>
>   \*   \*   \*
>
>   [A] LEXIS search uncovered more than 2,800 opinions on ERISA pre-emption.

*Id.* at 1749, n. 1.  Although *De Buono* was not a garden-variety fraud case like the instant case or like *Zoellner*, the Supreme Court there found no pre-emption. Where the majority of the present Supreme Court will finally end up on ERISA pre-emption in fraud cases is anybody's guess.

In the instant case, neither the original complaint nor the amendment adding class allegations ever mentioned an ERISA-governed plan. Instead, they describe alleged fraudulent misrepresentations that do not purport to misrepresent an ERISA plan or to implicate ERISA. If there was any ERISA connection, it was peripheral and accidental. Plaintiffs now, with this court's permission, have amended the description of their putative class, expressly eliminating all insurance policyholders as to policies that have any ERISA connection, few though there may be. Any latent ambiguity on the subject has been removed. There is no longer any possibility of this action being "related to" an ERISA plan, and although the complaint at the time of removal forms the basis for

3

removal, it is subject to amendment or clarification so as to allow remand for lack of jurisdiction. The perfect example is a post-removal binding concession by a diverse plaintiff that he will never seek nor accept more than $74,999.00.

A separate, appropriate order of remand will be entered.

DONE this 12th day of August, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE